MISSISSIPPI PRODUCTS, INC. *v.* SKIPWORTH.

No. 41402 March 7, 1960 118 So. 2d 345

*Young, Daniel & Coker,* Jackson, for appellant.

*W. M. Broome,* Crystal Springs; *Lipscomb & Barks-dale,* Jackson, for appellee.

Kyle, J.

This case is before us on appeal by the Mississippi Products, Incorporated, from a judgment of the Circuit Court of the First Judicial District of Hinds County, reversing an order of the Mississippi Workmen's Compensation Commission denying the claim of Cary Skipworth, a former employee of Mississippi Products, Incorporated, for compensation for permanent partial disability resulting from an injury sustained by the claimant on May 14, 1956, and awarding compensation for permanent partial disability to the claimant.

The record shows that the appellee, Cary Skipworth, received an accidental injury to his head on or about May 14, 1956, when a stack of 20 wooden panels, 12 or 14 feet

high, fell and struck him on the head. He was taken to the hospital in the City of Jackson where he remained for a period of several weeks and was examined and treated by Dr. Walter Neill. Dr. Neill stated that his first examination of the claimant revealed a swelling in the top and back of the head, but his examination revealed no pressure on the claimant's brain, only an irritation of the second cervical nerve. After his release from the hospital, sometime during the month of July, the claimant was taken to the home of his sister for one week, and then to his own home where he lived with his father and his mother. He carried with him the traction which he had used while he was in the hospital, and used it intermittently thereafter. The claimant convalesced at his home during the balance of the year 1956, and on January 7, 1957, he enrolled in the Vocational Department of the Hinds County Junior College at Raymond, Mississippi, for a course in automobile mechanics, and attended classes during a six-hour period each day, with the exception of two interruptions. The first interruption came on September 6, 1957, when he dropped out of the class for a period of several weeks, during which time he was hospitalized again by Dr. Neill. He returned to his classes on December 7, 1957. The second interruption came on April 17, 1958, and lasted until April 28, 1958.

The record also shows that the employer had notice of the claimant's injury on the day that it occurred, and that the claimant was paid disability compensation at the rate of $25 per week from the date of his injury until the time of the hearing before the attorney-referee on March 3, 1958. His medical and hospital expenses were also paid by the employer. The claimant filed with the Commission an application for a lump sum settlement on December 29, 1956; but no action seems to have been taken upon that application. The claim was finally controverted, and the cause was set for hearing by the at-

torney-referee. The hearings were begun on March 3, 1958, and were concluded on June 16, 1958.

The claimant testified that he was 24 years of age and lived at Terry with his mother and father before he went into the Military Service in 1954; that he was in the Army two years and was discharged on February 29, 1956; that he started to work for the Mississippi Products, Incorporated, March 7, 1956, and about three weeks later was made an inspector on the night shift, and was working at that job at the time of his injury. The claimant stated that during the summers before he went into the Army he worked on the farm, built fences, dug post holes, milked the cows, carried water and firewood, but he was unable to do any work of that kind at the time of the hearing. The claimant testified that, since his injury, he had been totally disabled; that he was unable to sleep well at night; that he was jittery, and when he became the least bit exhausted he had blind spells, and "everything just goes foggy." He stated that he suffered occasional blackouts, and that he bit his finger nails—a thing that he had never done prior to his injury.

On cross-examination the claimant stated that he had finished his junior year at the high school when he went into the Army. He stated that since the accident of May 14, 1956, he had engaged in no outside activities other than going to the barn with his daddy to feed the cows. The claimant stated that he did not remember when he registered to go to school at Hinds County Junior College at Raymond. He stated that he had taken courses in automobile mechanics at the college under the GI Bill of Rights, and the government had paid him a subsistence allowance of $135 a month. He stated that he had purchased a 1957 Ford car in July 1957, which he had driven some himself, but he did not spend much money on the automobile himself—"I mean, I don't use it at all hardly."

Four members of the claimant's family testified on behalf of the claimant. Each of those witnesses corroborates the claimant's testimony concerning the claimant's disability resulting from the injury, the constantly recurring headaches and occasional blackouts which he suffered, and the effect of such headaches and blackouts upon the claimant's ability to perform manual labor or pursue a gainful occupation.

Several witnesses were called to testify on behalf of the employer concerning the claimant's physical and mental condition before and after the accidental injury of May 14, 1956. Mrs. C. M. Burleson, the custodian of the records of the Vocational Department at the Hinds County Junior College, testified that the claimant had enrolled for a course in automobile mechanics at the college on January 7, 1957, and, with the exception of two interruptions, had attended classes regularly since that time. The claimant had only two unsatisfactory grade marks during the time he was enrolled as a student at the college. The two unsatisfactory marks were on textbook study in Unit No. 103, on January 1, 1958, and February 2, 1958. With the exception of those two unsatisfactory marks, the reports showed that he had received satisfactory grades during the time he was enrolled. Miss Estelle Scott, principal of the Terry Consolidated School, testified that Cary started to school in Terry in 1939, and that he was in the first grade two years, in the third grade two years, in the fourth grade two years and in the fifth grade two years. He dropped out at the end of the first semester while he was in the eleventh grade. He was slow to learn and appeared to be nervous and fidgety while he was in school; but he was never a problem child so far as discipline was concerned.

L. B. Bryant, teacher of Vocational Agriculture in the Terry High School since 1939, testified that he had known Cary since he was in grade school; that he seem-

ed to be nervous and restless; that he would get up and walk to the window and go back and sit down, and would move around a lot; that his grades were just average, but he had a fair attitude toward his fellow students and the teacher. Bryant stated that it had been almost a year since he had talked to Cary, but from the contacts which he had had with him he had seen no change in Cary's physical capacities or his mental condition during the last two years. He had seen Cary in his red and white Ford automobile, sometimes almost every day, and he had never seen anybody else drive it. On cross-examination Bryant stated that he did not recall that he had ever heard Cary complain of any severe or vascular headache, and Cary had never suffered a blackout while he was in one of his classes. J. R. Lewis, Marshal and Deputy Sheriff at Terry, testified that he had seen Cary driving his 1957 Ford automobile three or four times a week, and while he was living at home he saw him every day; that he had never seen anyone else driving the car; and that, basing his opinion upon his own observation of Cary before and after his injury, he saw no difference in him either physically or emotionally. He had never heard of Cary complaining of headaches or black-outs prior to 1956, or since that time. Miss Merle Hughes, cashier and bookkeeper of the Green Gable Service Station in Terry, testified that, according to the records in the service station office, Cary had purchased gasoline from the service station in amounts which aggregated 285 gallons between December 18, 1957 and February 7, 1958.

Dr. Walter Neill, neurologist, testified concerning his examination and medical treatment of the claimant, and also Dr. Frank Donaldson, a psychiatrist, to whom Dr. Neill referred the claimant for further examination sometime during the month of September 1957. Dr. Neill testified that for some considerable period of time following the injury of May 14, 1956, the claimant suf-

fered from headaches, which the doctor thought for a time were a neuralgia type headache, but that condition had cleared from a neurological standpoint, and so far as he was able to determine, the claimant was able to return to the duties of his former employment as of December 19, 1957. Dr. Neill was also of the opinion that any headaches or hypesthesia suffered by the claimant after that date were the result of a neurosis and that the relation of the accidental injury of May 14, 1956, to any neurosis suffered by the claimant at the time of the hearing could be best established by a specialist in the field of psychiatry. Dr. Neill testified that there was evidence of nail biting when he first saw the claimant at the hospital after his injury.

Dr. Donaldson testified that he had examined the claimant on several occasions. The first examination was made at Dr. Neill's request, while the claimant was in the hospital in Jackson in September 1957; that he had diagnosed the claimant as without neurological disease. Dr. Donaldson stated that the symptoms which he had observed in the claimant were vascular headaches, nail biting, hypesthesia of both hands at times, and of his right hand and arms most of the time. These symptoms had produced what the claimant described as blackout spells, and also a certain amount of fear within the claimant which was still present at the time of the hearing. The psychiatric diagnosis which the doctor had made was anxiety neurosis. That is a multiplicity of symptoms that come from an overstimulation of the autonomic system coming out of the subconscious mind.

Dr. Donaldson stated that the symptoms referred to have a disabling effect upon the patient and the blackouts and fear of blackouts would limit the activities of the patient; that an anxiety neurosis is somewhere around 50 per cent disabling, and about 50 per cent of those who suffer from anxiety neurosis will get completely well. In regard to the relationship of the acci-

dental injury suffered by the claimant to the anxiety neurosis, Dr. Donaldson stated that, if the claimant showed no signs of neurosis prior to the accident and did show such signs following the regaining of consciousness after the accident, he would say that the accident either caused or precipitated the neurosis. Dr. Donaldson also stated that there were certain factors in the claimant's history which indicated a neurosis pre-existing the injury complained of, and if the claimant had such neurotic symptoms prior to the accident the accident would not have played a part in the present condition of the claimant, unless there was a marked change following the accident, and then the causal connection between the accident and the claimant's present condition would be speculative.

The attorney-referee found that there was a marked conflict between the testimony of the claimant's witnesses and the testimony of the witnesses called on behalf of the employer in regard to those factors indicative of the prior existence of an anxiety neurosis and a change in the condition of the claimant following the accidental injury, and that conflict in the testimony was incapable of being reconciled. The attorney-referee was of the opinion that the evidence offered on behalf of the claimant was not sufficient to establish as a fact that an anxiety neurosis resulted from the accidental injury to the claimant on May 14, 1956. The attorney-referee found that, as a result of the accidental injury complained of, the claimant was temporarily totally disabled from May 14, 1956, to December 13, 1957; that on December 13, 1957, the claimant attained the point of maximum medical recovery; and that the claimant had no residual or permanent disability as a result of the accidental injury on May 14, 1956. The attorney-referee therefore ordered that the employer pay to the claimant compensation for temporary total disability from May 14, 1956, to December 13, 1957, at the rate of $25 per week, and

that the employer pay the expenses for medical services and supplies required for the claimant as a result of the accidental injury, and the attorney-referee further ordered that the employee's claim for permanent disability as a result of the accidental injury be denied. The award thus made and the order of the attorney-referee denying compensation for permanent partial disability were affirmed by a unanimous vote of the full Commission.

The learned circuit judge, after reviewing the record on appeal, was of the opinion that the defendant had not met the burden of proof imposed upon it under the rule laid down by this Court in Hale v. General Box Manufacturing Co., 235 Miss. 301, 108 So. 2d 844, that, "Where injury by accident arising out of and in the course of employment is shown, the burden is on the employer to prove his defense that present disability is due to some other intervening cause or preexisting condition for which he is not responsible." The circuit judge was of the opinion, and so found, that there was no substantial evidence in the record to support the findings of the attorney-referee and the Commission that the claimant suffered no residual or permanent disability as a result of the accident. In reaching that conclusion, the circuit judge stated that all of the testimony of the claimant and his family might be ignored, "and it may be assumed that some of them were not telling the truth." The circuit judge was of the opinion that, although the testimony offered on behalf of the employer clearly indicated that the claimant had been going to school under the GI Bill of Rights and had taken a course in automobile mechanics at the Hinds County Junior College since January 1957, and that the claimant had purchased a new automobile during the month of July 1957, which had been driven approximately 18,000 miles at the time of the hearing on March 3, 1958, and the evidence did not show that the claimant was totally disabled. Dr. Donaldson's testimony that he did not consider the claimant

able to work and that he had a disability of approximately 50 per cent was controlling; and for that reason the circuit judge reversed the order of the Commission and awarded compensation to the claimant for permanent partial disability at the rate of $14 a week.

The only question presented for our decision on this appeal is whether the learned circuit judge erred in holding that there was no substantial evidence to support the findings of the attorney-referee and the Commission.

 After a careful review of the entire testimony, we think there was substantial evidence in the record to support the findings of the attorney-referee and the Commission that the claimant had suffered no residual or permanent disability as a result of the accident of May 14, 1956; and that the learned circuit judge erred in reversing the order of the Commission denying the claim for compensation for permanent partial disability. As we have already stated, Dr. Neill, who had treated the claimant from the beginning, testified that from a neurological standpoint he could find no evidence of nerve root pressure except the irritation of the second cervical nerve root, which he thought had cleared up. Dr. Neill was of the opinion that at the time of the hearing the claimant had no neurological disability, and that any headaches that he might be suffering from were of a psychiatric nature. Dr. Donaldson testified that in his opinion the claimant was suffering from anxiety neurosis, and that he felt that the claimant's disability was causally related to the accident. But Dr. Donaldson stated that, if the claimant had the neurotic symptoms "that he has now" prior to the accident, then he would say that it was an anxiety neurosis which was a continuation of one that existed prior to the injury.

This case is somewhat similar to the Hale case, supra, but it is a much weaker case from the claimant's standpoint than the Hale case. In the Hale case there was no serious doubt as to the claimant being practically

totally disabled at the time of the hearing. Two doctors had testified definitely that in their opinion Hale's condition was due to the trauma which he had suffered at the time of his fall. An award had been made by the Commission in the Hale case for permanent partial disability, and there was no appeal by the employer and its insurance carrier from that award. The only question presented for this Court to decide in that case related to the alleged insufficiency of the award made in favor of the claimant. In this case the facts are entirely different from the facts in the Hale case. The proof clearly shows that the claimant has led a very active life, since his discharge from the hospital on October 1, 1957, and has engaged in many normal activities not to be expected of a person who suffers from constantly recurring headaches and blackouts. Several disinterested witnesses testified that Skipworth's condition appeared to be about the same as it was before his injury.

██ The Commission is the trier of the facts under the Workmen's Compensation Law. ██ The Commission had a right, and it was its duty, to evaluate the testimony of the lay witnesses and the medical testimony and to base its findings upon the evidence as a whole. The testimony of the claimant's lay witnesses as to the claimant's disability was greatly discredited by the testimony of other disinterested witnesses who had known the claimant both before and after his injury. The opinion evidence of Dr. Donaldson, we think, was inconclusive, and the weight to be given to that opinion was to be determined by the Commission in the light of all of the evidence.

The learned trial judge, in our opinion, erred in setting aside the findings and award of the Commission and in entering a judgment for the claimant which included an award of compensation benefits for permanent partial disability at the rate of $14 per week.

The judgment of the lower court is therefore reversed and the order of the Commission is reinstated and affirmed by this Court, and the cause remanded for enforcement of the order of the Commission.

Reversed and remanded.

*Hall, Holmes, Ethridge* and *Gillespie, JJ.,* concur.